UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN BEAR MANAGEMENT CORPORATION AND DELTA ADJUSTING COMPANY,<br><br>        Plaintiff,<br><br>   v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY No. 50006700119,<br><br>        Defendant. | No. 2:22-cv-02097-JAM-SCR<br><br>**COURT'S TENTATIVE ORDER RECONSIDERING AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Following the pretrial conference in this case, the Court, sua sponte, decided to reconsider its previous Order on the parties' cross-motions for summary judgment, ECF No. 63 ("Order") filed by Golden Bear Management Corp. ("Plaintiff") and Certain Underwriters at Lloyd's London ("Defendant"). See Plaintiff's Mot., ECF No. 43; Defendant's Mot., ECF No. 48; Plaintiff's Reply and Opp'n, ECF No. 54; Defendant's Reply, ECF No. 61. The Court denied both cross-motions in their entirety. Order. Upon further review of these cross-motions and for the following reasons, the Court tentatively GRANTS Defendant's motion for summary judgment in its entirety.

///

1

I.    FACTUAL AND PROCEDURAL BACKGROUND

The parties submitted a Joint Pretrial Statement in which they stipulated to the following undisputed facts. See Joint Pretrial Statement, ECF No. 64. Defendant issued a policy ("the Policy") to Plaintiff, effective December 31, 2019 to December 31, 2020. Id. at 3. The Reporting and Notice conditions stated, "As a condition precedent to coverage, if during the **Policy Period**, an **Insured** first becomes aware of circumstances from which a **Claim** may be reasonably anticipated, and if the **Insured** gives written notice of such circumstances . . . in no event later than sixty (60) days after the end of the **Policy Period**, then any **Claim** subsequently arising from such circumstances shall be deemed to have been first made on the date written notice was given to the **Insurer**." Id. at 5. The Policy included a choice of law clause that stated it was governed by the laws of New York. Id.

Plaintiff agreed to bind, write, and administer insurance policies for North American Capacity Insurance Company ("NAC"). See id. Plaintiff underwrote a policy issued by NAC that covered a bar and nightclub in Miami. Id. at 5-6. On May 25, 2019, one of the bar's dancers drove drunk and killed three minors. Id. at 6.

In its original Order, the Court found that there were disputed material facts that "went to the core of each party's cross-motion." Order at 2. Upon further review and reflection, the Court now finds that there are two purely legal issues that go to the core of this case and can be decided on summary judgment.

## II. OPINION

### A. Legal Standard

A district court may reconsider its ruling on a motion for summary judgment before final judgment is entered. United States v. Desert Gold Mining Co., 433 F.2d 713, 715 (9th Cir. 1970). The Ninth Circuit explained, "The law of the case doctrine . . . was designed to further the 'principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided.' While courts are generally urged to adhere to this doctrine, it is 'not an inexorable command.' That is, the doctrine 'is discretionary, not mandatory' and is in no way 'a limit on [a court's] power.'" City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 888 (9th Cir. 2001) (citations omitted). Indeed, "The doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." Id. In a later case, the Ninth Circuit reiterated, "Just as in Santa Monica Baykeeper, the district court reconsidered its own order, over which its jurisdiction had not yet been divested. Therefore, under the authority of Santa Monica Baykeeper, the district court did not violate the law of the case doctrine." United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004).

"District courts in this circuit have applied Santa Monica Baykeeper and Smith liberally in holding that a district court has authority to review any order prior to final judgment or appeal of the issue to be reviewed." In re Northrop Grumman

3

1  Corp. ERISA Litig., No. CV0606213MMMJCX, 2010 WL 11469724, at *16
2  (C.D. Cal. Aug. 12, 2010) (collecting cases).  "Reconsideration
3  is appropriate if the district court: (1) is presented with newly
4  discovered evidence, (2) committed clear error or the initial
5  decision was manifestly unjust, or (3) if there is an intervening
6  change in controlling law.  Aside from these factors, a district
7  court also has inherent authority to reconsider an interlocutory
8  decision to prevent clear error or prevent manifest injustice."
9  Gray v. Golden Gate Nat. Recreational Area, 866 F. Supp. 2d 1129,
10 1132 (N.D. Cal. 2011) (internal quotation marks and citations
11 omitted).

12      Moreover, Federal Rule of Civil Procedure 56(f) provides
13 that the Court may "consider summary judgment on its own after
14 identifying for the parties material facts that may not be
15 genuinely in dispute."  Fed. R. Civ. P. 56.  The Supreme Court
16 explained that "district courts are widely acknowledged to
17 possess the power to enter summary judgments sua sponte, so long
18 as the losing party was on notice that she had to come forward
19 with all of her evidence."  Celotex Corp. v. Catrett, 477 U.S.
20 317, 326 (1986).  Thus, "A district court may sua sponte grant
21 summary judgment when the losing party has had a full and fair
22 opportunity to ventilate the issues involved in the motion."
23 Edson v. Valleycare Health Sys., 21 F. App'x 721, 722 (9th Cir.
24 2001) (internal quotation marks and citations omitted).

25      Applying these legal principles to the case at bar, this
26 Court concludes that it may reconsider, sua sponte, its order
27 denying summary judgment.  Accord J2 Glob. Commc'ns, Inc. v.
28 Protus IP Sols., No. CV06-00566 DDPAJWX, 2010 WL 1609965, at *3

4

(C.D. Cal. Apr. 20, 2010). Upon reconsideration, the Court determines that its prior order denying summary judgment was clear error. There has not been an entry of final judgment, and Plaintiff, the losing party here, "has had a full and fair opportunity to ventilate the issues" involved in this Order by briefing its motion for summary judgment and opposing Defendant's cross-motion. See Edson, 21 F. App'x at 722. While it is not required, the Court will give the parties an opportunity to submit supplemental briefs in response to this Tentative Order before it becomes final.

Summary judgment is appropriate when the record, read in the light most favorable to the non-moving party, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

B. Reconsideration of Summary Judgment

1. Whether a Claim Was Made in the Policy Period

The Court first addresses whether Plaintiff made a claim during the Policy period, which ran from December 31, 2019 to December 31, 2020. The Policy is governed by New York law. While Plaintiff argues that California law should apply because the dispute concerns contractual performance, Defendant correctly points out that the authorities upon which Plaintiff relies do not support its position. See Plaintiff's Mot. at 16 n.10; Defendant's Mot. at 24. When interpreting contracts under New York law, "words should be given the meanings ordinarily ascribed to them and absurd results should be avoided . . . the meaning of particular language found in insurance policies should be

examined in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect those purposes." Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127, 135 (2d Cir. 1986). By the plain meaning of the contract provision at issue here, Plaintiff must show that it first became aware of circumstances from which a claim may be reasonably anticipated during the Policy period.

On December 23, 2020—during the Policy period—Plaintiff provided Defendant a notice of potential claim arising from allegations of bad faith, which stemmed from the incident in Miami. See Joint Pretrial Statement at 6. Plaintiff states that it did not reasonably anticipate a claim "at any time prior to" December 23, 2020, because it "believed it handled" the claims appropriately. See Plaintiff's Reply at 14. But on August 5, 2019—sixteen months before Plaintiff provided notice and four months before the Policy even started—Plaintiff received a letter from the law firm representing the parents of a deceased minor from the incident in Miami that demanded Plaintiff's client tender its policy limits within twenty-one (21) days, or the law firm would file "a lawsuit for wrongful death against your insured and pursuing all damages allowed under the law." See Letter, ECF No. 53-2 at ECF Header p. 44. Then, on August 21, 2019, Plaintiff received an email from the same law firm stating, "Failing to tender your policy limits despite the overwhelming evidence and public knowledge is clearly bad faith." See Email, ECF No. 53-1 at ECF Header p. 182. The email continued, "In light of your denial of our policy limit demand you have forced the [victim's] family to file a lawsuit." Id. Plaintiff does

6

not dispute these facts.  See Plaintiff's Response to Defendant's Statement of Undisputed Facts 157 and 158, ECF No. 55.

Defendant argues that these documents establish that Plaintiff "first became aware of the bad faith allegations in August 2019" and thus cannot make a claim under the Policy.  See Defendant's Reply at 9.  Plaintiff counters that it did not reasonably anticipate a claim in August 2019 because it believed it handled the claims properly.  See Plaintiff's Reply at 14.  But Plaintiff does not explain what new circumstances developed by December 2020 that made it reasonably anticipate a claim. Instead, Plaintiff broadly asserts that "it became apparent that the plaintiffs would no longer accept NAC's policy limits because, they believed, those limits had been opened by NAC's (and thus by GBMC's) failure to secure the settlement within the policy limits."  See Plaintiff's Statement of Undisputed Fact 36.

However, the evidence provided disproves Plaintiff's generalization and shows that circumstances remained largely unchanged between August 2019 and December 2020.  First, Robert Squire, the defense attorney handling the Miami incident, sent various letters to the attorneys representing the estates of the deceased, offering their clients mediation and the policy limit of $1 million.  See Plaintiff's Index of Evidence, Exh. 13, ECF No. 47-2.  Mr. Squire sent identical letters on December 3, 2020 and January 29, 2021 offering this settlement, which suggests that he had not heard anything by January 29, 2021 that precluded the possibility of settlement within the policy limits.  See id. Plaintiff points to no evidence supporting its assertion that, as of December 2020, the attorneys representing the estates of the

7

1    deceased would no longer accept the policy limits.  Second,
2    Plaintiff states that on December 23, 2020, it "still believed it
3    had handled the claims properly for NAC, but was putting Lloyd's
4    on notice in an abundance of caution."  See Plaintiff's Statement
5    of Undisputed Fact 38, ECF No. 45.  Finally, on January 5, 2021,
6    Stacey Jackson, Defendant's General Counsel, wrote, "The insured
7    has not made a claim against us nor has the insured threatened
8    litigation."  See Index of Evidence, Exh. 17.  This evidence
9    demonstrates that, as of December 2020, Plaintiff had not become
10   aware of new circumstances that made it more likely to reasonably
11   anticipate a claim than based on the circumstances existing in
12   August 2019.  On the contrary, the circumstances remained largely
13   unchanged between August 2019 and December 2020.
14        As such, there is no genuine dispute that Plaintiff did not
15   "first bec[ome] aware of circumstances from which a Claim may be
16   reasonably anticipated" during the Policy period.  See Joint
17   Pretrial Statement at 5.  If Plaintiff claims that it reasonably
18   anticipated a claim in December 2020, then the August 2019
19   documents show that Plaintiff did not first become aware of those
20   circumstances in December 2020 because Plaintiff was aware of the
21   same circumstances in August 2019 as in December 2020.
22   Alternatively, if as Plaintiff claims, in December 2020 it
23   believed that it handled the claims properly, then it did not
24   reasonably anticipate a claim during the Policy period.  In
25   either event, there is no evidence to support Plaintiff's
26   position that it first became aware of circumstances from which a
27   claim may be reasonably anticipated during the Policy period.
28   This, of course, is "fatal to [the] claim."  See Nat'l Union Fire

Ins. Co. v. Talcott, 931 F.2d 166, 168 (1st Cir. 1991).

         2.   Whether Plaintiff Can Obtain Relief Beyond the Policy Limits

Separately, the Court considers whether Plaintiff can obtain relief beyond the Policy limits. In the operative complaint, Plaintiff brings a single count for declaratory judgement, asking the Court to indemnify Plaintiff for the amount it agreed to pay NAC "up to the limits of liability of the Policy." Second Amended Complaint ¶ 49, ECF No. 14. The parties agree that the Policy limits caps liability at $3 million. See Joint Pretrial Statement at 18.

In its motion for summary judgment, Plaintiff requests—for the first time—that the Court provide it relief for $4.5 million, the amount it paid NAC. See Plaintiff's Mot. at 24-25. Plaintiff argues that Defendant is liable beyond the Policy limits because Defendant breached its duty to settle and thus the implied covenant of good faith and fair dealing. See id. But Plaintiff does not bring a claim for breach of contract or breach of the implied covenant. Instead, its sole claim is for declaratory judgment, and there is no mention in the complaint of any other cause of action.

Plaintiff argues it will recover the $4.5 million "[o]ne way or another," so the Court should provide the sought relief now. See Plaintiff's Reply at 21. To support its argument, Plaintiff cites 28 U.S.C. Section 2202, which states, "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by

9

such judgment." 28 U.S.C. § 2202. The only Ninth Circuit case Plaintiff cites does not support its position because it states that Section 2202 "permits additional hearings <u>after</u> a court grants declaratory relief." <u>Nautilus Ins. Co. v. Access Med., LLC</u>, No. 17-16265, 2021 WL 3485911, at *2 (9th Cir. Aug. 9, 2021) (emphasis added). As Defendant points out, "it would be utterly improper to enter any damages order or judgment" at this time because no declaratory relief has been granted in this case. <u>See</u> Defendant's Reply at 13. If Plaintiff eventually obtains default judgment, then it may bring a motion pursuant to Section 2202. Until then, the operative complaint is clear that it can only obtain relief up to the Policy limits.

### III.   ORDER

For the reasons set forth above, the Court tentatively GRANTS Defendant's motion for summary judgment. The parties may submit supplemental briefs in response to this Tentative Order. Plaintiff shall file its opening brief within five (5) days of this Tentative Order. Defendant shall file its response to Plaintiff's brief within five (5) days thereafter. Plaintiff shall file its reply to Defendant's brief within five (5) days thereafter. Each brief shall not exceed ten (10) pages.

IT IS SO ORDERED.

Dated:  February 10, 2025

_____
JOHN A. MENDEZ
SENIOR UNITED STATES DISTRICT JUDGE